IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| CARLITA JOSEPH | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-03-1038 |
| | § | |
| | § | |
| JO ANNE B. BARNHART, | § | |
| COMMISSIONER OF SOCIAL SECURITY | § | |

**OPINION AND ORDER**

Before the Court is Plaintiff Carlita Joseph's action pursuant to Section 205(g) of the Social

Security Act, 42 U.S.C. § 405(g), requesting judicial review of a final decision of the Commissioner

of the Social Security Administration denying her claim for disability insurance benefits under Title

II of the Social Security Act, 42 U.S.C. § 401 *et. seq.* Plaintiff and Defendant have filed Motions

for Summary Judgment. The Court has carefully considered the parties' briefs and the record in this

case and now issues this Opinion and Order.

**Background**

Plaintiff filed her application with the Commissioner for SSI benefits on August 2, 2001,

alleging inability to work since January 1, 1996, due to a thyroid impairment, neck and back

problems, and depression. (Transcript ("Tr.") at 85-87; 126-147). Plaintiff's date of birth is

December 14, 1956, making her approximately 47 years old at the time of the hearing. (Tr. at 35).

She completed eighth grade and later obtained her G.E.D. (Tr. at 35). Plaintiff worked as a retail

sales clerk, day care attendant, and a beautician/cosmetologist assistant. (Tr. at 35; 136).

The Social Security Administration denied Plaintiff's application at the initial and reconsideration stages. (Tr. at 56; 57). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held before an ALJ on August 12, 2003. (Tr. at 32-55). Plaintiff was represented by counsel at the hearing. (Tr. at 34). On August 27, 2003, issuing an unfavorable opinion, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful work since the date of her application.

2. The claimant has obesity, degenerative changes of the spine, and hypothyroidism (status post thyroidectomy), severe impairments. She has a depressive disorder, a non-severe impairment. She does not have an impairment or combination of impairments that meets or equals in severity the requirements of any of the medical listings in Appendix 1, Subpart P, Regulations No. 4.

3. The claimant's testimony was not fully credible or consistent with the record considered as a whole.

4. The claimant has the residual functional capacity to perform low stress light work allowing alternate sitting and standing at will during the workday and involving no climbing or working at heights or around moving or dangerous equipment.

5. The claimant does not have the residual functional capacity to perform her past relevant work.

6. The claimant is 46 years of age, defined as a younger individual.

7. The claimant has a limited education.

8. The claimant does not have skills that readily transfer to jobs within her functional capacity.

9. Based on the testimony of the vocational expert, and using Rule 202.18, Appendix 2, Subpart P, Regulations No. 4, as a framework for decision making, jobs that the claimant is able to perform exist in significant numbers in the national economy. Examples of such jobs include office helper, information clerk, and products assembler.

10.    The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision.

(Tr. at 29-30).  Plaintiff requested review of the ALJ's decision by the Appeals Counsel.  (Tr. at 9-20).  On November 7, 2005, the Appeals Council denied Plaintiff's request for review.  (Tr. at 4-7).  The decision of the ALJ thereby became the final decision of the Commissioner, and it is from this final decision that the appeal has been taken pursuant to 42 U.S.C. § 405(g).

Plaintiff's challenges the ALJ's assessment of her residual functional capacity ("RFC").  In particular, Plaintiff claims that the ALJ's assessment of her RFC is not based on either credible medical evidence or any evidence to establish the limiting effects of her impairments.  (Pl.'s Mot. at 1; 6-10).  Plaintiff also claims that the ALJ's assessment of her RFC is not supported by substantial evidence because the ALJ failed to re-contact her treating doctor to obtain clarification of his opinion.  (Pl.'s Mot. at 2; 10-13).  Plaintiff urges the Court to remand this case because the errors committed by the ALJ cannot be viewed as harmless because an issue of material fact remains unresolved.  (Pl.'s Mot. at 13-14).  The Commissioner, in contrast, contends that there is substantial evidence in the record to support the ALJ's decision, that the decision comports with applicable law, that any deficiency in the ALJ's written decision constitutes harmless error, and that the decision should be affirmed.  The Court omits a survey of her medical history except as relevant to the discussion below.

## Discussion

A federal court reviews the Commissioner's denial of benefits only to ascertain whether (1) the final decision is supported by substantial evidence and (2) the Commissioner used the proper legal standards to evaluate the evidence.  *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Jones*

*v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).  The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence.  42 U.S.C. § 405(g) (2000).  Substantial evidence is defined as being more than a scintilla and less than a preponderance and of such relevance that a reasonable mind would accept it as adequate to support a conclusion.  *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).  While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record, try the issues de novo, or substitute its judgment" for that of the Commissioner even if the evidence preponderates against the Commissioner's decision.  *Chaparo v. Bowen*, 815 F.2d 391 (5th Cir. 1985).  Conflicts in the evidence are for the Commissioner to resolve.  *Brown*, 192 F.3d at 496;  *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

A claimant bears the burden of proving he suffers from a disability under the Social Security Act.  *Anthony*, 954 F.2d at 293.  The mere presence of an impairment does not necessarily establish a disability.  *Id.*  A claimant is only disabled within the meaning of the Social Security Act if she has a medically determinable physical or mental impairment lasting at least 12 months that prevents her from engaging in substantial gainful activity.  42 U.S.C. § 423(d)(1)(A).  To determine whether an individual is disabled, the Commissioner utilizes the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(b)-(f).  The Commissioner applies a five-step sequential process to decide disability status.  *Anthony,* 954 F.2d at 293; *see also Leggett v. Chater,* 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991).  Under this formula, the claimant bears

4

the burden of proof on the first four steps of the analysis to establish that a disability exists. *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir. 1999).  If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *Id*;  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Rivers v. Schweiker*, 684 F.2d 1144, 1152-1153 (5th Cir. 1982).  If, at any step in the process, the Commissioner determines that the claimant is disabled, the evaluation ends. *Leggett,* 67 F.3d at 564;  *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984).

### Residual Functional Capacity Issues

An ALJ has "the sole responsibility for determining a claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).  This includes the determination of a claimant's residual functional capacity ("RFC"). *Ripley*, 67 F.3d at 557.  RFC is a "term of art [that] merely designates the ability to work despite physical or mental impairments." *Carter v. Heckler*, 712 F.2d 137, 140 (5th Cir. 1983).  The RFC evaluation is an assessment of an individual's ability to do sustained-related physical and mental activities in a work setting on a regular and continuing basis. *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  The ALJ's determination is reached through a combined "medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988).

1. *Whether Substantial Evidence Supported ALJ's RFC Assessment?*

In this case the ALJ found that Plaintiff, while unable to perform her past work, retained the functional capacity to perform low stress light work allowing alternate sitting and standing at will

5

during the workday and involving no climbing or working at heights or around moving or dangerous equipment. (Tr. at 29-30). In reaching this conclusion it is evident that the ALJ considered the opinion of the reviewing medical doctor, the objective medical evidence, the mental health assessment and RFC assessment, and the written responses provided by the Plaintiff, as well as the Plaintiff's own testimony at the hearing. Plaintiff alleges that the ALJ's assessment of her RFC is not based on either credible medical evidence or any evidence to establish the limiting effects of her impairments. The Court disagrees.

The evidence before the ALJ consisted of the opinion of the reviewing medical expert. *See* 20 C.F.R. § 404.1527(f)(2) (the opinion of a non-examining physician can serve as substantial evidence). In particular, the reviewing medical expert concluded that Plaintiff, while obese, did not have any physical limitations from her thyroid condition or neck and back problems. (Tr. at 224).

In addition, consistent with the expert's opinion, the ALJ determined that the medical documentation did not support the severity of limitations alleged by Plaintiff. For example, with regard to her thyroid condition, the medical records before the ALJ showed that, while Plaintiff had an enlarged goiter forming on her neck and several normal and abnormal thyroid levels (Tr. at 271; 279; 288; 303), she underwent a thyroidectomy in or around November 2001 (Tr. at 145) and was subsequently treated with hormone replacement. (Tr. at 258, 340). Plaintiff's thyroid condition was under control and was not manifested by a disabling condition. (Tr. at 26).

The medical records also documented Plaintiff's complaints of neck and back pain, yet the x-rays of her lumbar spine showed only degenerative changes without evidence of any compression (Tr. at 202; 204; 241), and an MRI of her lumbar spine revealed no evidence of any herniated discs. (Tr. at 237; 240). The MRI of her cervical spine showed degenerative changes and disc bulging (Tr.

6

at 238-39), however, upon examination, her doctor found her cervical range of motion and flexion was normal and that her motor and sensory exams were intact in not only her upper extremities, but also her lower extremities.  (Tr. at 236).  In fact, in her medical records, Dr. Weiner repeatedly documented that she had normal motor and sensory examinations.  (Tr. at 151; 154; 159; 164; 167; 170; 173; 176; 179; 182; 185; 189; 234; 236; 296; 301; 305; 309; 317; 319; 325).  In addition, medical records reflected that her physical examinations revealed normal (5/5) muscle strength, equal reflexes, intact sensation, muscle spasms, a negative straight leg rasing test, a normal range of motion of the lumbar spine and cervical spine, and an ability to walk heel and toe walk.  (Tr. at 151; 154; 159; 164; 166; 167; 170; 173; 176; 179; 182; 185; 189; 201; 234; 236; 296; 301; 305; 309; 317; 319; 325).

Plaintiff's medical records also reflected that she complained of pain in her left hand and elbow, yet x-rays revealed no fractures, dislocations or other bony abnormalities.  (Tr. at 162; 244).  In December 2001, while Plaintiff requested wrist splints from Dr. Weiner due to carpal tunnel syndrome, the medical records reflect no such diagnosis or treatment.  (Tr. at 143).

The record reflects that the ALJ also considered the effect of Plaintiff's obesity in assessing her RFC.  (Tr. at 26).  For example, the ALJ noted that Plaintiff's "height was recorded as 66 inches, and her weight was recorded as follows: 255 pounds in May 1998; 243 points in December 1999; 262 pounds in September 2000" and she was described as morbidly obese.  (Tr. at 26).  The ALJ heard Plaintiff's testimony in which she explained that it was hard to find a job where she could sit down most of the day.  (Tr. at 36).  Plaintiff testified that she could not stand more than 10 to 15 minutes at a time before having to sit or lay down to rest (Tr. at 36; 40), she was able to bend slightly when she is seated, but was unable to bend over completely (Tr. at 40), she could go up or down

stairs, but would have to stop and rest (Tr. at 41), she could walk for about 5 minutes before having

to stop to rest (Tr. at 41), she could do tasks like combing or brushing her hair, but explained that

she had difficulty holding her arms up to do her hair and normally has to sit down to do it (Tr. at 39-

40), and she could lift and carry a gallon of milk or a five pound bag of sugar (Tr. at 42).  As to her

activities, Plaintiff testified that she didn't do any housework because she had her children do it (Tr.

at 44), and that she spends most of her days lying down in bed.  (Tr. at 42-43).  She stated that she

was able to drive a car and drives to church every Wednesday night and Sunday.  (Tr. 45).  Plaintiff

also testified that her memory was bad. (Tr. at 45-46).

     In addition to Plaintiff's testimony, the record before the ALJ also contained a description

of her physical activities that she provided to Dr. Joseph, an examining doctor.   Plaintiff's

description of her activities to Dr. Joseph was somewhat inconsistent with her testimony.   For

example, when describing her physical activities to Dr. Joseph, Plaintiff detailed the following:

> [s]he wakes up at 6 o'clock in the morning, wakes up her kids, and
> gets them to school.  She states she watches news and stays awake till
> 1 o'clock, but then reports that she dozes off so often.  She states that
> she calls and checks on her mother.  The patients states that she does
> all the chores like cooking, washing, and reports that she goes two
> times to church in a week, Sunday and Wednesday.  She states that
> she has no hobbies and reports that she has to sit on a chair to take a
> bath, but, however, she reported that she does not need any help to
> take a bath.

(Tr. at 198).

     Although the ALJ did not find Plaintiff's testimony wholly credible since it was inconsistent

with other evidence in the record, it is apparent that he did not discount her testimony entirely when

determining her RFC.  *See Greenspan*, 38 F.3d at 237 (ALJ entitled to determine the credibility of

witnesses).  Instead, the ALJ recognized Plaintiff's exertional limitation in assessing her RFC (*i.e.*,

the ability to alternate between sitting and standing at will during the workday, no lifting in excess of 20 pounds or frequent lifting in excess of 10 pounds, no heights or climbing, no moving or dangerous equipment, and limited bending and stooping) (Tr. at 49), and these exertional limitations were largely consistent with her testimony.

In addition to considering Plaintiff's exertional limitations, the ALJ also considered possible mental or non-exertional limitations when assessing her RFC.  For example, the medical records before the ALJ reflected Plaintiff's complaints of depression for which she was treated with medication.  She underwent a consultative mental examination in November 2001.  Dr. Joseph, the examining doctor, noted that Plaintiff had a sad and tearful affect, normal memory, clear sensorium and orientation, monotone speech, some poverty of speech, fair concentration, and fair insight and judgment.  (Tr. at 197).  Dr. Joseph diagnosed Plaintiff with mood disorder that was secondary to chronic medical problems. (Tr. at 198; 207).  In addition to the exam, an assessment of Plaintiff's mental limitations was also completed (Tr. at 204-223).  The Plaintiff's mental functional capacity consisted of the following assessments: no restrictions in activities of daily living, no difficulties in maintaining social functioning, only a mild difficulty in maintaining concentration, persistence, or pace, and the possibility of experiencing one or two episodes of decompensation, each of extended duration.  (Tr. at 214).  The findings contained in the assessment also reflected that Plaintiff had no significant limitations in her understanding and memory, social interaction, or adaption skills (Tr. at 220-21); and, within the category of "sustained concentration and persistence" she was found to have no significant limitations on six of the eight different assessments, but found to be "moderately limited" in two areas within this category (*i.e.*, ability to perform activities within a schedule and ability to complete normal workday and workweek without interruption from psychologically based

symptoms).  (Tr. at 220-21).  The mental health expert, however, concluded that Plaintiff was "able to understand, remember, and carry out simple instructions, interact with others, and respond approp[riately] to changes."  (Tr. at 222).  Aside from his determination at step one of the analysis, at step four of the analysis, an ALJ must consider the possible non-exertional limitations when assessing a claimant's RFC.  20 C.F.R. § 404.1545(c).  Here, the ALJ did so.  Considering both the mental health examiner's opinion and the reviewing examiner's assessment of her mental functional capacity, the ALJ determined that given Plaintiff's functional capacity, she should be limited to low stress light duty jobs.  Based on this record, the Court cannot find that it was error for the ALJ to make this determination.

Procedural perfection in an administrative proceeding is not required and an administrative determination will not be set aside absent a showing that the substantial rights of a party have been affected.  *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).  Upon this record, including the absence of any evidence in the record or other factual predicate from which a doubt could be raised as to Plaintiff's RFC, the Court concludes that the ALJ's decision comports with applicable law and substantial evidence exists in the record to support the ALJ's finding that Plaintiff was capable of performing at least a limited range of light work as her exertional and non-exertional limitations did not preclude such work.[1]  Plaintiff has not met her burden to prove that she could not, in fact, perform the work suggested.

---

[1] The Court also observes that a vocational expert ("VE") testified and, notwithstanding the limitations, identified three unskilled positions (*i.e.*, office helper, information clerk, and small products assembler) that Plaintiff could perform.  (Tr. at 49).  In response to a question posed by Plaintiff's counsel, the VE testified that two of positions he identified typically did not "involve any lifting more than dockets or ledgers, or perhaps not even that, not that much weight."  (Tr. at 52).

The Court concludes that Plaintiff's Motion is **DENIED** and Defendant's Motion is **GRANTED** on this issue.

### 2. *Treating Physician Issue & Whether ALJ Had Duty to Re-Contact?*

In a Medical Release/Physician's Statement form signed on April 29, 2003, Dr. Weiner, Plaintiff's treating doctor, concluded that she was permanently disabled due primarily to a disabling diagnosis of cervical disc disease and, secondarily, due to disabling diagnosis of hypothyroidism. (Tr. at 250). Ordinarily, the opinions of treating physicians are given considerable weight in determining disability. *Myers*, 238 F.3d at 621. This is especially true when the treatment period has been over a considerable period of time. *Perez v. Schweiker,* 653 F.2d 997, 1001 (5th Cir. 1981). However, less weight can be given if good cause is shown. Good cause includes conclusory statements from the treating physician, opinions otherwise unsupported by the evidence, or conclusions unsupported by medically accepted clinical techniques. *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000); *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981). In this case, as discussed above, Dr. Weiner's statement is conclusory and not supported by relevant medical tests. Moreover, Dr. Weiner's opinion that Plaintiff was permanently disabled is simply not a "medical opinion" within the meaning of the regulations. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (ALJ must consider six factors set forth in 20 C.F.R. § 404.1527(d) with regard to a physician's medical opinions); *see also Miller v. Barnhart*, 2006 WL 3825663, *2 (5th Cir. Dec. 27, 2006) (physician's opinion that claimant was disabled is a legal conclusion, not a medical opinion). Instead, determinations concerning disability are reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(1); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). The ALJ adequately explained his reasons for not accepting Dr. Weiner's opinion. (Tr. 27).

11

*Harper v. Barnhart*, 176 Fed.Appx. 562, 567-68 (5th Cir. 2006) (ALJ did not err in disregarding a fill-in the blank opinion of treating doctor that claimant was disabled and unable to work for a year). The ALJ did not err in rejecting Dr. Weiner's statement.

Nevertheless, Plaintiff contends that the ALJ had a duty to re-contact Dr. Weiner to obtain his medical opinion regarding Plaintiff's functional limitations to perform work.  However, as pointed out by the Commissioner, the only evidence before the ALJ that suggested Plaintiff was unable to work was the April 2003, Physician's Statement from Dr. Weiner.  "The duty to re-contact is triggered when the evidence is insufficient to make an *informed* determination," however, "[n]o regulation, ruling, or court holding imposes a duty to re-contact a treating or other medical source simply because existing evidence is inadequate for a *favorable* determination." [Emphasis original]. *Oderbert v. Barnhart*, 413 F.Supp.2d 800, 805 (E.D.Tex. 2006).  Moreover, as Plaintiff herself acknowledges, "the absence of [a medical source] statement, however, does not, in itself, make the record incomplete."  *Ripley*, 67 F.3d at 557-58 (citing to 20 C.F.R. 404.1513(b)(6)).  An ALJ can make a claimant's RFC assessment without a medical source statement if substantial evidence exists in the record to support the assessment.  *Id*.  As previously discussed by the Court, substantial evidence existed in the record to support the ALJ's assessment of Plaintiff's RFC.

The Court, therefore, concludes that Plaintiff's Motion is **DENIED** and Defendant's Motion is **GRANTED** on this issue.

### 3. *Necessity of Remand?*

Plaintiff contends that this case must be remanded because a "crucial evidentiary gap" exists in terms of her functional limitations and "[t]he required additional evidence can be obtained from the plaintiff's treating physician."  Plaintiff claims that plaintiff's treating doctor, had he be given

12

the opportunity, would have established "a more restrictive residual functional capacity."

Harmless error analysis applies to administrative failure to comply with a regulation. *See Frank*, 326 F.3d at 622. A violation of a social security ruling merits remand only when a claimant affirmatively demonstrates prejudice. *Hall v. Schweiker*, 660 F.2d 116. 119 (5th Cir. 1981). Prejudice is established by showing that additional evidence could have been produced, and "that the additional [evidence] might have led to a different decision." *Newton*, 209 F.3d at 458. An error is harmless unless there is reason to think that remand might lead to a different result. *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989).

Initially, the Court observes that Dr. Weiner's April 29, 2003, Physician's Statement was completed well in advance of the administrative hearing on August 12, 2003 and, at no time did Plaintiff submit any such evidence from Dr. Weiner, or any other doctor, either before or after the hearing to the Appeals Council for additional consideration. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) (request for remand for the consideration of additional evidence requires a showing of good cause as to why the evidence was not presented in the prior proceeding). Furthermore, aside from his conclusory allegations, Plaintiff points to no additional source evidence that might have led to a different decision. In the absence of such evidence, Plaintiff has not demonstrated prejudice or harmful error. The Court must, therefore, affirm.

The Plaintiff's Motion is **DENIED** and Defendant's Motion is **GRANTED** on this issue.

## Conclusion

Considering the record as a whole, the undersigned is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which directs a finding of "not disabled" on these facts. *See Rivers v. Schweiker*, 684 F.2d 1144 (5th

Cir. 1982).  As all the relevant factors weigh in support of the ALJ's decision, and as the ALJ used the correct legal standards, it is **ORDERED** that Defendant's Motion for Summary Judgment (Instrument No. 9) is **GRANTED**, Plaintiff's Motion for Summary Judgment (Instrument No. 8) is **DENIED**, and that this action (Instrument No. 1) is **DISMISSED**.

**DONE** at Galveston, Texas, this 8th day of March, 2007.

_____
Samuel B. Kent
United States District Judge

14